No. 11,944.

Hoback v. Rink.

Decided September 24, 1928.

Messrs. Gooding & Monson, for plaintiff in error.

Mr. J. F. Meador, for defendant in error.

*Department One.*

Mr. Justice Walker delivered the opinion of the court.

Plaintiff in error was plaintiff, defendant in error defendant, in an action to obtain reformation of a warranty deed from plaintiff to defendant. The deed, which was executed January 10, 1923, conveyed a tract of land in Moffat county. The reformation sought by the plaintiff was the insertion in the deed of a clause reserving to him one-half of all the oil and gas contained in the land, which reservation he claimed was omitted by mutual mistake of the parties.

To reverse the judgment denying the reformation, plaintiff contends that, although there was a conflict in the testimony, the finding of the court for the defendant

was palpably unwarranted in view of all the evidence, and that therefore the case forms an exception to the general rule against disturbing the findings of the trial court; or, to state it differently, and in view of the requirement of proof in cases of this kind, he contends that the evidence of the alleged mutual mistake was so clear, convincing and unequivocal, and the evidence to the contrary so unsatisfactory, that plaintiff was entitled, as a matter of law, to the favorable judgment of the trial court.

The plaintiff and his brother Elmer, the defendant and her husband Bert Rink, had for several years resided upon and operated two adjoining ranches, one of which was the tract described in plaintiff's deed, upon a kind of partnership. On January 10, 1923, plaintiff and defendant came to Craig, the county seat, and employed Ralph White, clerk of the district court, to prepare a deed, which plaintiff then acknowledged and delivered. The deed made no mention of oil or gas, and in it the consideration was recited to be $10 and the grantee's assumption of a mortgage upon the land. At this time the patent for the land, which was plaintiff's homestead claim, had not been received. In the following month, plaintiff left Colorado for Utah and the northwest. On March 15th, the patent was received and recorded by White and the defendant. On April 25th, the deed to defendant was recorded. In October, 1923, defendant executed certain oil and gas leases on the land, and in February, 1924, she executed a royalty contract to one O. M. Burks. In August, 1924, plaintiff returned to Colorado, and shortly thereafter brought this action. No oil wells had been sunk on the land up to the time of the bringing of the action.

Plaintiff testified that he and defendant made the agreement for the sale of the land to defendant in the latter part of 1922, in several conversations, and that it was then settled between them that in the deed to be executed, plaintiff was to have an absolute reservation of

one-half of the oil and gas. He testified that both parties forgot to mention this to White when he was drawing the deed, and that they did not think of it until the following day when they were driving home, at which time defendant said that rather than have a new deed made to the land, she would make a deed to plaintiff for one-half of the oil and gas, and would have it recorded, and would send it to him, and to this the plaintiff agreed. Defendant, however, testified that she really bought the land in 1918, and that plaintiff then made her a deed, which deed was burned when her dwelling was destroyed by fire in 1922, and that the deed of 1923 was made in place of the former deed which had never been recorded. She testified that no conversations concerning the reservation of the oil and gas, or the making of the deed therefor, such as plaintiff testified to, ever occurred. Elmer Hoback also testified that he was with Mrs. Rink and plaintiff, on their way home, the day following the execution of the 1923 deed, and that he did not hear anything said about the oil and gas rights, or another deed, and that he could have heard it had it been said. This witness also testified that the plaintiff told him as early as 1921 that Mrs. Rink had bought the place from him. O. M. Burks testified that in the late summer or fall of 1922, plaintiff stated that Mrs. Rink had become the owner of the place.

Upon this evidence, if there were no more, it is clear that we could not overturn the finding of the trial court. But plaintiff says that the documentary evidence in the case conclusively refutes the testimony of the defendant, when considered in connection with her explanation of it. One of these documents, known in the case as exhibit 5, is an assignment by defendant to plaintiff, of a one-half interest in the oil and gas contained in the land here in question. It was executed April 25, 1923, before Ralph White, at Craig. By whom it was drawn does not appear. It provides in substance that the right given was only to be effective in case oil or gas was dis-

covered on the land while in defendant's possession; and that in case she should sell the land before such discovery, plaintiff's right should terminate; and further, that it was not to be recorded until gas or oil was found on the land, but might until that time be left with "any bank of reputation." This instrument, which was never recorded, was left with White, by the defendant, she saying she "would call for it," and she did take it from him in February, 1924. The execution of this instrument, the plaintiff argues, strongly supports his claim of the agreement for the reservation of the oil and gas and the giving of a deed therefor. But plaintiff does not rely upon this instrument as creating any rights in him. On the contrary, he expressly repudiates it, because of the conditions it contains, as set forth above. Consequently, in order to give it probative force in support of his claim, we must treat an act, which was a breach of the contract if made as plaintiff claims, as evidence that the contract was so made. The defendant's explanation of the making of exhibit 5, is, that she wished to give the plaintiff an interest in the oil and gas, especially as she had also decided to give such an interest to his brother Elmer. She further testified that in the correspondence hereinafter mentioned, the plaintiff had asked her to give him some of the oil. It is true that some of the details of this explanation appear unconvincing under cross examination. Nevertheless, her explanation seems at least as credible as the theory that, within two or three months after plaintiff had left Colorado, and while the parties were still apparently upon good terms, the defendant conceived and carried through, the crafty but rather futile scheme of a pretended compliance with the alleged contract for a reservation of the oil. The other documentary evidence strongly relied upon by the plaintiff consisted of four letters purporting to have been written by defendant to plaintiff, between May, 1923, and March, 1924, and known in the case as exhibits 1, 2, 3, and 4. Defendant admitted the authorship of exhibits 1 and 4, but was in doubt as to

2 and 3. Exhibit 1 was dated May 18, 1923, and contained among other things the following statement, "Well Clarence I had the papers fixed out and got the deed recorded." Exhibit 2 is abstracted by plaintiff as bearing date of "Dec. 2, 1924," the "4" being said to be a mistake for "3." An inspection of the original makes this doubtful, and it is possible to read the date as "Feb. 2 1920" or "Feb. 2 1924." In exhibit 2 occurred the following statements, among others: "Now Clarence is a good time to turn loose here I believe I can sell the oil rights now and pay you all I owe you I can sell for $2000 and I will send you $1500 fine and $1000 to you that would only leave me $500. But I can pay you this just as soon as you send me the papers back. You go to a notary public and make the papers out to me for all the oil rights and send them to me I got mine made out and waiting for yours. I made out for all the oil * * * If I sell our oil right is gone anyway and if I can get $2000 that will help out now * * * Well I will send the numbers to you."

Exhibit 3, bearing date of December 30, 1923, contains no reference to the oil rights. Exhibit 5, bearing date of March 14, 1924, mentions the finding of oil in the neighborhood. Plaintiff contends the statements in these letters constitute conclusive admissions, by the defendant, of plaintiff's right to the reservation of the oil and gas rights. The statement quoted from exhibit 1, however, is at least equally as consistent with defendant's version of the execution of exhibit 5, as with plaintiff's. The recording of the deed to defendant, on April 25th (and this was not to be recorded until the patent had been received) furnishes a more probable basis for the reference found in exhibit 1 to the recording of the deed, than plaintiff's theory that this was a deliberate lie on the part of the defendant to deceive the plaintiff into believing that a new deed to the oil and gas had been recorded. Defendant herself testified that the statement quoted from exhibit 1, was a reference to exhibit 5. Ex-

hibit 2 contains allusions to a state of accounts between the parties, which are wholly inexplicable by any testimony on that point covering the period when plaintiff says this letter was written, and we do not think that it was by any means established beyond doubt that this letter was actually written by defendant in December, 1923. The effect of this correspondence, as evidence, was greatly depreciated because of its incomplete character. Although plaintiff had in his possession, as he testified, several other letters written to him by the defendant, during this same period, he did not produce them, nor bring them to the trial, and for this gave no reason except that one of his former attorneys advised him that such letters were immaterial. His own letters to her had not been kept by defendant, according to her testimony. Defendant was almost entirely illiterate.

We are not convinced that the documentary evidence in the case constituted such clear, precise and indubitable evidence of the alleged mistake or omission in the execution of the deed, as required the trial court to disregard the oral testimony of the defendant to the contrary.

The evidence on both sides is in many places obscure and confusing, especially with reference to the state of accounts between the parties, and the consideration for the deed. We shall not, however, further discuss the evidence, as we think that what we have set forth demonstrates that we cannot set aside the finding of the trial court.

The judgment is affirmed.

Mr. Chief Justice Denison, Mr. Justice Burke and Mr. Justice Whitford concur.